JAMES A. MORELAND, in right of his wife, *et al.*, plaintiffs in error, *vs.* AMBROSE HUNLEY, defendant in error.

1. Nettles, in 1841, in Alabama, by deed of gift, conveyed to his daughter, Mrs. Harrington, certain slaves, "to have said negroes and their increase, unto her and her children, free from the control of her husband, and from all liability to the payment of any of the debts of her said husband:" *Held*, that Mrs. Harrington, at common-law, took only a life-estate in said slaves, remainder to her children.

2. Where all the evidence was fully considered and passed upon by the jury, and the Judge below refused to grant a new trial upon any ground connected with it, but granted a new trial solely upon an erroneous construction of a deed of gift, the granting of the new trial will be reversed.

Trover. Motion for new trial. Decided by Judge WOR-RILL. Harris Superior Court. October Term, 1867.

Moreland, in right of his wife, who was Caroline Harrington, and as *prochien ami* of Joseph D. and William Harrington, brought an action of trover against Ambrose Hunley to recover certain slaves, valued at $4,100.00, and their hire since 1842. The writ was filed in September, 1857.

Moreland and William Harrington died. Mrs. Harrington being still a minor, Isham S. Helton was made guardian for her and said other minors, by the Court of Ordinary of Carroll county, Georgia, and William B. Harrington was made administrator of the estate of William Harrington, and said guardian and administrator became parties plaintiff.

At April Term, 1860, the case was tried on the appeal.

The plaintiff read in evidence the letters of guardianship of said Helton, and the following deed of gift:

"STATE OF ALABAMA, Chambers County. To all men to whom these presents shall come, *Greeting:* Know ye, that I, Samuel M. Nettles, of the county and State aforesaid, for and in consideration of the love and affection which I have for my daughter, Martha A. Harrington, and also for other divers causes moving me thereto, have this day given and granted, and by these presents do give and grant, unto my

Moreland *vs.* Hunley.

said daughter, the following property, to-wit: one negro woman, Jenny, about twenty years old, and her two children, Mariah and Rhoda, to have said negroes and their increase, unto her, my said daughter, and to her children, free from the control of her husband and from all liability to the payment of any of the debts of her said husband.

"In testimony whereof I have hereto set my hand and seal this, the sixth of November, 1841.

*Test:*                SAMUEL M. NETTLES. [SEAL.]

EZEKIEL WARD,

GEORGE W. LYERS.

The plaintiff then proved that these minors, plaintiffs, were the children of Martha A. Harrington, the daughter of said Nettles, that the negroes (or some of them) mentioned in said deed had been in possession of defendant since 1841 or 1842, that those which he had were worth $4,300.00, and closed.

The defendant read in evidence a bill of sale, made in Chambers county, Alabama, on the 24th of January, 1842, in presence of Cyrus White and said Ezekiel Ward, by which said Samuel M. Nettles, William Harrington and Martha Ann Harrington, conveyed said slaves to defendant with a warranty of title.

It was then shown that at the date of the first and second papers Samuel M. Nettles was largely indebted to various persons, among whom was defendant; that he owed defendant say $1000.00 for some land, and said conveyance of these slaves to him was in payment of that debt. The defendant showed that at the date of the gift Nettles was embarrassed by judgments, etc., and contended that this gift was made to hinder, delay, and defraud his creditors. His witnesses, however, admitted that after paying all his debts Nettles had a negro man, Hope, worth about $1200.00, some land worth about $800.00, and perhaps $500.00 worth of other property. There was also some testimony as to the value of the slaves.

On the other hand, the plaintiff's witnesses testified that though heavily indebted at the date of the gift, yet Nettles

had property more than sufficient to pay his debts, that he did pay them, and had Hope and his land, etc., left, (one witness saying this residuum was worth $3500.00 ;) that the gift by Nettles to his daughters was made to keep her husband from spending the property, and that defendant took his bill of sale with full knowledge of the deed of gift.

For the points made during the progress of the case see the motion for a new trial. The verdict was for $4300.00 for the plaintiffs. The defendant moved for a new trial upon the grounds, 1st and 2d, That the verdict was contrary to the evidence, the charge of the Court, etc. 3d, Because the Court erred in declining to charge the jury as requested by defendant's attorneys, in writing, that if said deed of gift was not fraudulent and void, and was good and valid for any purpose, then it conveys the entire title to the negroes to Mrs. Harrington, and her children took no interest under it, and the plaintiffs cannot recover, and further that plaintiffs have no title and cannot recover. 4th, Because the Court erred in this, that during the progress of the trial defendant's counsel made the point that said deed of gift conveyed no title to plaintiffs, and that they could not recover under it, which was overruled by the Court. 5th, Because the Court erred in declining to give the following in charge to the jury, as requested in writing by defendant's counsel ; that, if the proof shows the contract (deed of gift,) to have been made in the State of Alabama, and with intent to hinder or delay creditors, then the laws of Alabama will control the same, and that although the defendant may have had notice of the said voluntary conveyance by said deed of gift, still if defendant afterwards purchased said negroes for a valuable consideration he is not affected by such notice of said voluntary conveyance. 6th, Because the Court erred in admitting in evidence the letters of guardianship granted in Carroll county, Georgia, to Isham S. Helton. 7th, Because the Court erred in granting the order for plaintiffs to substitute the name of the guardian as plaintiff in place of the next friend by whom suit was instituted, and who had died.

This motion remained in *statu quo* till April Term, 1867,

when said defendant amended his said motion as follows : 8th, Because since the trial of said cause the slaves for which said suit was brought have been emancipated by the Government, and that all property in them has been destroyed, and without the fault of the defendant in said action ; and defendant alleges that if allowed a new trial he will be able to prove by his own testimony that he purchased said negroes and paid a full and fair price for them, and *bona fide* believed he had a good title to them, and held them in good faith as his own property.

The Court granted a new trial, and this is assigned as error.

G. J. WRIGHT, D. P. HILL, MULLINS, for plaintiffs in error.

MOBLEY, INGRAHAM & RAMSEY, for defendant in error.

HARRIS, J.

1. The new trial granted by the Judge below was evidently upon the *sole* ground that the deed of Nettles made in Chambers county, Alabama, conveyed in the *habendum* an estate to *the children* of Mrs. Harrington inconsistent with that given to Mrs. Harrington *in the premises.*

In this interpretation of the deed of Nettles, we think there was error. The words of conveyance are, " do give and grant unto my said daughter a negro woman and her children, to have said negroes and their increase *unto my said daughter and her children,* free from the control of her husband, and from all liability to pay any of the debts of said husband."

To vest at common-law a fee simple estate in Mrs. Harrington, the words " and to her heirs " were essential ; without them, by the uniform adjudications of the English Courts, she could only have taken an *estate for life.* Did she take more by the deed in this case ? No statute of Alabama has been shown, or decision of her highest Court referred to, which will authorize us to assume that the principles of the common-law have been altered by or departed from in that State. The common-law of necessity, then, furnishes

the only rule for the interpretation of instruments made in other States. Controlled by its familiar principles, we are constrained to hold that, under the deed of Nettles, that Mrs. Harrington took a life estate only in the slaves, remainder to her children.

If this reasoning is correct, it is impossible that there can be any inconsistency of estates, as supposed by the Judge below.

2. The whole testimony in the cause seems to have been fully considered and passed upon by the jury, and the Judge having refused to grant the new trial upon any ground connected with it, but only upon the law point which we have just disposed of, we think that this old litigation should be arrested, and accordingly reverse the judgment, granting a new trial.